UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>Power Home Solar, LLC,<br><br>Debtor.<br><br>JIMMY R. SUMMERLIN, JR., in his capacity as Chapter 7 bankruptcy trustee for the Estate of POWER HOME SOLAR, LLC d/b/a PINK ENERGY,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., in its capacity as Administrative Agent for JPMorgan Chase Bank, N.A., CitiBank, N.A., and Pinnacle Bank; JPMORGAN CHASE BANK, N.A., CITIBANK, N.A., and PINNACLE BANK, N.A.,<br><br>Defendants. | Chapter 7<br><br>Case No. 22-50228<br><br><br><br>AP Case No. 23-03013<br><br><br><br>MOTION TO APPROVE SETTLEMENT OF ADVERSARY PROCEEDING AND CLAIMS OBJECTION PURSUANT TO RULE 9019 |

NOW COMES, JIMMY R. SUMMERLIN, JR., in his capacity as the Chapter 7 bankruptcy trustee (the "Trustee") for the Estate of Power Home Solar, LLC d/b/a Pink Energy (the "Debtor"), by and through his undersigned counsel moves for entry of an order approving the settlement of the above captioned Adversary Proceeding adverse to JPMorgan Chase Bank, N.A., *et al*. (collectively "JPM", and with the Trustee, the "Parties") and Claims Objection (as defined below), pursuant to the terms of that certain Settlement Agreement attached as **Exhibit A** to this Motion (the "Settlement"), pursuant to Local Bankruptcy Rule 9019-1(a) and

Bankruptcy Rule 9019 of the Federal Rules of Bankruptcy Procedure.[1]  In support of this Motion, the Trustee respectfully asserts the following:

## JURISDICTION AND VENUE

1. This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is appropriate in this district pursuant to 28 U.S.C. § 1409.

## BACKGROUND AND PROCEDURAL HISTORY

2. On October 7, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the Western District of North Carolina (the "Court").  The Trustee in this proceeding has been duly appointed and is serving as the Chapter 7 Trustee.

3. On February 10, 2023, JPM filed proofs of claim representing amounts loaned under the Credit Agreement (Claim Nos. 3901-1 and 3904-1], as amended on March 24, 2023 [Claim Nos. 3901-2 and 3904-2] (as amended, the "Proofs of Claim").

4. On March 9, 2023, the Trustee filed an objection to the Proofs of Claim (Base Case Docket No. 366), as supplemented on April 21, 2023 (Base Case Docket No. 468) (the "Claims Objection").

5. On May 10, 2023, the Trustee filed this Adversary Proceeding (Docket No. 1) against JPM seeking, among other things, the avoidance of an alleged preferential/fraudulent/voidable transfer pursuant to 11 U.S.C. § 547(b), 11 U.S.C. § 548(a), 11 U.S.C. § 544(b), and applicable state laws.

---

[1] All capitalized terms used in this Motion shall have the same meaning ascribed to them in the Settlement.  To the extent any terms in the Motion are inconsistent with the Settlement, the Settlement shall control.

YMBT 290477.1                                   Page **2**

6. On August 11, 2023, JPM filed its Answer and Defenses (Docket No. 10), denying the material allegations of the Complaint and asserting certain affirmative defenses against the relief requested by the Trustee.

7. Since August 11, 2023, the Trustee and JPM have engaged in continuous discussions regarding the potential settlement of this Adversary Proceeding and have, as set forth in the Settlement, come to an agreement on the terms of settlement.

8. Upon an evaluation of JPM's Answer and Defenses, the nature of the various Claims asserted in the Generac Suit (*Power Home Solar, LLC v. Generac Power Systems, Inc.*, W.D.VA Case No. 6:22-cv-00043-NKM) (the "Generac Suit"), currently applicable case law, and the anticipated costs and expenses of fully litigating this Adversary Proceeding, the Trustee submits that the Settlement proposed is in the best interest of the estate and its creditors.

## SETTLEMENT TERMS

9. The Settlement sets out the terms of the Parties' settlement in full.

10. Generally, the Settlement provides the following:

- Repayment of Cash Collateral advances made by JPM to the Estate pursuant to the Cash Collateral Order (Base Case Docket No. 40);

- Distribution of JPM's pro-rata portion of funds currently held by the Estate pursuant to the terms of the Carve Out Order (Base Case Docket No. 232);

- Amendment of the Term Sheet, as incorporated into the Carve Out Order to revise the split of any recoveries from the Generac Lawsuit from 30% to the Estate and 70% to JPM to 40% to the Estate and 60% to JPM;

- Removing any "D&O Lawsuit" from the Term Sheet and acknowledgment by JPM that, except as to certain proceeds that may be

derived from the "D&O Policy", JPM has no security interest in any D&O Lawsuit(s);

- JPM agreeing to advance up to $50,000.00 for a forensic accounting of the Debtor's pre-petition activities with its principals by the Trustee's accountant, Middleswarth, Bowers & Co., L.L.P.;

- JPM agreeing to defer recovery on its massive "Deficiency Claim" until other general unsecured creditors have recovered at least 30% of their allowed claims;

- Stipulation as to the "Commercial Tort Claims" in which JPM has a security interest; and

- The Trustee granting a release to JPM including with respect to the Adversary Proceeding and Claims Objection.

## RELIEF REQUESTED

11. Bankruptcy Rule 9019(a) states: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

12. Generally, "compromises are favored in bankruptcy." *Myers v. Martin*, 91 F.3d 389, 393 (3rd Cir. 1996) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)). In approving a settlement, the court "need not conduct an exhaustive investigation," or mini-trial, "into the validity of the merits of the claims sought to be compromised." *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). It is sufficient that the court finds that the settlement was negotiated in good faith as well as being reasonable, fair, and equitable. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

13. Courts have identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable: (1) the probability of

success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of creditors. *See Myers*, 91 F.3d at 393 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

14.    In the sound exercise of his business judgment, the Trustee has determined that the best interests of the bankruptcy estate and creditors are served by settling on the terms set forth above. In reaching this conclusion, the trustee considered: (a) potential defenses, which the JPM raised during the course of negotiation; (b) the costs and delay attendant to litigating with JPM; (c) the risks of litigation with JPM; and (d) the significant difficultly, even if the Trustee were to succeed in litigating with the JPM, of parsing any recoveries from Generac among the various contract and commercial tort claims.

15.    The Trustee submits that the Settlement proposed herein is reasonable, fair, and equitable, was negotiated at arms' length and in good faith, and yields funds that can be distributed to the creditors in this case among other benefits. Such other benefits include providing the Trustee with additional resources to investigate other potential avenues of recovery for the creditors, clarifying the record with respect to other matters that may result in future litigation, and mitigating costs associated with pursuing lengthy and protracted litigation that has no guarantee of success.

## CONCLUSION

16.    The Settlement provides a resolution of disputes between the Parties in interest to this bankruptcy case relating to the Transfers and the Demand. The terms are fair and reasonable and meet the standards required by Bankruptcy Rule 9019.

17.    Accordingly, the Trustee requests that the Court approve the Settlement and enter an order approving the Motion.[2]

Dated: March 26, 2024.

        YOUNG, MORPHIS, BACH & TAYLOR, LLP

        /s/ Jimmy R. Summerlin, Jr.
        Jimmy R. Summerlin, Jr.
        N.C. State Bar No. 31819
        P.O. Drawer 2428
        Hickory, NC 28603
        Telephone: (828) 322-4663
        Facsimile: (828) 324-2431
        jimmys@hickorylaw.com

*Attorneys for the Estate and Jimmy R. Summerlin, Jr., in his capacity as Bankruptcy Trustee for Power Home Solar, LLC*

---

[2] Attached to the Motion as Exhibit B is a proposed order approving this Motion.

YMBT 290477.1        Page **6**

# **EXHIBIT A**

**Settlement Agreement**

YMBT 290477.1

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "Settlement Agreement") is made as of March 15, 2024 by and between Jimmy R. Summerlin (the "Trustee"), solely in his capacity as chapter 7 trustee of Power Home Solar, LLC d/b/a Pink Energy (the "Debtor") on the one side, and JPMorgan Chase Bank, N.A. ("JPM" and, together with the Trustee, the "Parties"), on the other, as administrative agent on behalf of itself, CitiBank, N.A., and Pinnacle Bank (collectively, the "Lenders") under that certain Credit Agreement dated as of November 23, 2021 (the "Credit Agreement"), among the Debtor, JPM, and the Lenders.

## RECITALS

**WHEREAS**, on October 7, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, commencing the bankruptcy case in the United States Bankruptcy Court for the Western District of North Carolina (the "Court"), captioned as *In re Power Home Solar, LLC*, Case No. 22-50228 (Bankr. W.D.N.C.) (the "Chapter 7 Case");

**WHEREAS**, prior to the Petition Date, the Lenders extended certain loans to the Debtor under the Creditor Agreement, which loans were secured by liens on substantially all of the Debtor's assets (the "Collateral");

**WHEREAS**, in connection with the commencement of the Chapter 7 Case, the Court appointed the Trustee as the chapter 7 trustee for the Debtor's estate. Accordingly, the Trustee is vested with, *inter alia*, the authority to pursue certain causes of action on behalf of the Debtor's estate, including the avoidance and recovery of transfers under chapter 5 of the Bankruptcy Code;

**WHEREAS**, on October 19, 2023, the Court entered the Parties' *Stipulation and Agreed Order Authorizing Limited Use of Cash Collateral* [ECF No. 40] (the "Cash Collateral Order");

**WHEREAS**, on December 1, 2021, the Trustee, with the consent of the Lenders, filed the *Motion (A) For Approval Of Carve-Out Agreement With JPMorgan Chase, N.A., et al., For Liquidation Of The Debtor's Assets; (B) For Approval Of Auction Marketing Agreement; And (C) To Sell Assets Free And Clear Of Any And All Liens, Encumbrances, Claims And Interests* [ECF No. 165] ("Carve Out Motion") seeking approval to (i) make certain carve-outs of the Collateral for the benefit of the Debtor's estate, as memorialized in a certain "Term Sheet" attached to the Carve Out Motion (the "Term Sheet"), and (ii) to enter into an Auction Marketing Agreement with Iron Horse Auction Company, Inc. to liquidate certain of the Collateral, among other things;

**WHEREAS**, on December 19, 2021, the Court entered the *Order on Trustee's Motion (A) For Approval Of Carve-Out Agreement With JPMorgan Chase, N.A., et al., For Liquidation Of The Debtor's Assets; (B) For Approval Of Auction Marketing Agreement; And (C) To Sell Assets Free And Clear Of Any And All Liens, Encumbrances, Claims And Interests* [ECF No. 232], granting the relief requested in the Carve Out Motion;

507198237.7

**WHEREAS**, on January 9, 2023, the Trustee filed the *Notice of Sale* [ECF No. 262], providing notice of the scheduling of auction sales set by Iron Horse Auction Company, Inc. and affiliated companies;

**WHEREAS**, on February 10, 2023, JPM filed proofs of claim representing the amounts loaned under the Credit Agreement [Claim Nos. 3901-1 and 3904-1], as amended on March 24, 2023 [Claim Nos. 3901-2 and 3904-2] (as amended, the "Proofs of Claim");

**WHEREAS**, on March 9, 2023, the Trustee filed an *Objection to Claims of JPMorgan Chase Bank, N.A., as Administrative Agent (Claim No. 3901) and JPMorgan Chase Bank, N.A. (Claim No. 3904)* [ECF No. 366], as supplemented on April 21, 2023 [ECF No. 468] (the "Claims Objection"), asserting various objections to the Proofs of Claim;

**WHEREAS**, on March 27, 2023, the Trustee filed the *Motion to Approve Disbursement of Operating Asset Auction Sales Proceeds to JPMorgan Chase, N.A.* [ECF No. 421], seeking to disburse amounts related to the liquidation of certain of the Collateral in accordance with the Term Sheet;

**WHEREAS**, on March 30, 2023, the Trustee filed the *Second Motion to Approve Disbursement of Operating Asset Auction Sales Proceeds to JPMorgan Chase, N.A.* [ECF No. 441], seeking to disburse additional amounts related to the liquidation of certain of the Collateral in accordance with the Term Sheet;

**WHEREAS**, on April 18, 2023, the Court entered the *Order Granting Motion to Approve Disbursement of Operating Asset Auction Sales Proceeds to JPMorgan Chase, N.A.* [ECF No. 460] and the *Order Granting Second Motion to Approve Disbursement of Operating Asset Auction Sales Proceeds to JPMorgan Chase, N.A.* [ECF No. 461];

**WHEREAS**, the Trustee asserts that he holds certain claims against the Lenders under chapter 5 of the Bankruptcy Code for avoidable transfers and recoverable transfers made by the Debtor during the 90-day period preceding the filing of this case related to certain transactions under the Credit Agreement;

**WHEREAS**, on May 10, 2023, the Trustee filed a complaint (the "Complaint") against JPM and Lenders, asserting various causes of action, including actions under chapter 5 of the Bankruptcy Code pursuant to 11 U.S.C. §§ 544, 547 and 548, and various state law analogues to section 548 (N.C. Gen. Stat. ¶ 39-23.1 *et seq.;* N.Y. Debt. & Cred. Law § 270, *et seq.*; and Del. Code Ann. Tit. 6, ¶ 1301 *et seq.*) (collectively, the "Avoidance Claims"), initiating an adversary proceeding styled as *Summerlin v. JPMorgan Chase Bank, N.A., et al.*, Case No. 22-50228, Adv. No. 23-03013 (Bankr. W.D.N.C.) (the "Adversary Proceeding");

**WHEREAS**, the Trustee alleged in the Complaint, in part, that the Lenders received preferential and fraudulent transfers related to a prepetition amendment dated August 5, 2022 (the "Amendment") to that certain Pledge and Security Agreement dated November 23, 2021, executed by the Debtor, its affiliates, and the Lenders (the "Security Agreement"), which Amendment identified the civil suit *Power Home Solar, LLC v. Generac Power Systems, Inc.*, Case No. 6:22-cv-00043-NKM (W.D. Va.) (the "Generac Suit") as a commercial tort claim and part of the Collateral;

507198237.7         2

**WHEREAS**, JPM answered the Complaint on August 11, 2023 (the "Answer"), denying some of the Trustee's allegations in the Complaint and asserting certain affirmative defenses challenging the validity of all of the Trustee's claims in the Complaint, and otherwise denying that the Trustee is entitled to any of the relief demanded in the Complaint;

**WHEREAS**, since the filing of the Complaint and Answer, the Trustee, in conjunction with his employed professionals, has reviewed and determined that the Debtor is only entitled to a *de minimus* amount of Employee Retention Tax Credit such that the potential amount thereof does not justify continued expense of litigating any entitlement thereto;

**WHEREAS**, upon the initiation of the Adversary Proceeding, the Trustee, the Trustee's legal counsel, and JPM engaged in arms' length and good faith negotiations under Federal Rule of Evidence 408 to attempt to resolve the Adversary Proceeding and the Claims Objection fully and finally in all respects;

**WHEREAS,** on October 24, 2023, the Trustee, the Trustee's legal counsel, and JPM agreed to a settlement by altering certain terms and allocations included in the Term Sheet, as set forth in this Settlement Agreement (the "Settlement");

**WHEREAS**, the Parties have exchanged information, negotiated and now desire to resolve all matters respecting the Adversary Proceeding and the Claims Objection, upon the terms and conditions set forth in this Settlement Agreement.

**NOW THEREFORE**, for good and valuable consideration, it is stipulated, consented to and agreed to by and between the Parties as follows:

1. The Parties acknowledge that the cash assets currently held by the Trustee for the Estate are comprised of three (3) categories – (a) the "Mixed Funds", which are funds on deposit not from the liquidation of the Debtor's physical assets, some of which are Property of the Estate and some of which are Collateral of JPM, with a balance, as of March 4, 2024 of $156,938.48; (b) "Operating Assets Funds", which are funds on deposit derived from the liquidation of the Debtor's Operating Assets pursuant to the Term Sheet, with a balance, as of March 4, 2024, of $619,348.47; and (c) "All Estate Funds", which are funds derived from the liquidation of the Debtor's vehicles and trailers pursuant to the Term Sheet, and the Estate's portion of previously approved disbursements of the Operating Assets Funds.

2. In Settlement of the various disputes set forth above, the Parties agree to the following terms, each of which are expressly negotiated as important aspects of the Settlement and are not severable:

    a. Within 5 business days after the entry of the order approving this Settlement Agreement, the Trustee shall file a motion to disburse to JPM:

        i. $93,915.90 from the Mixed Funds account, representing amounts advanced by JPM pursuant to the Cash Collateral Order, and

        ii. 70% of the Operating Assets Funds, less a pro-rata share of banking fees assessed and paid by the Estate through the date of distribution, based on the percentage of Operating Assets Funds to

507198237.7                                                 3

    be distributed to JPM in relation to the total of funds held by the Estate for the period in which the fee was paid.

  b. The Parties agree that the balance of the funds remaining in the Mixed Funds account after the above disbursement ($63,022.58) shall be solely property of the Estate and no portion thereof shall be held subject to any collateral interest of JPM.

  c. The Parties agree to the following revisions of the Term Sheet:

    i. The following provision (paragraph 3 of the "Named Lawsuits" section of the Term Sheet) is deleted in its entirety:

      For all remaining amounts, a recovery of 30% to the Estate and 70% to JPM.

     And replaced in with the following:

      For all remaining amounts, (a) a recovery of 30% to the Estate and 70% to JPM with respect to the Named Lawsuits other than the Generac Lawsuit, and (b) a recovery of 40% to the Estate and 60% to JPM with respect to the Generac Lawsuit.

    ii. The term "D&O Lawsuit" shall be deleted in its entirety from the Term Sheet.

    iii. The term "D&O Policy" shall be added as a new defined term to the Term Sheet, and defined as the following:

      "D&O Policy" means the insurance policy between Federal Insurance Company and Renewable Clean Energies, LLC, dated March 11, 2022, including any amendments, riders, and tail policies related to the same.

    iv. A new section entitled D&O Policy shall be added, providing the following:

      The Trustee shall engage, subject to Court approval, Michael T. Bowers or Middleswarth, Bowers & Co., L.L.P. as forensic accountant (the "Accountant") to investigate potential claims against the directors, officers, and executives of the Debtor (collectively, the "Insiders").

      JPM shall advance fees for such Accountant in an amount up to $50,000.00 (the "Accountant Advance") in order to enable the investigation of the Insiders. The Trustee shall exercise his business judgment in directing the Accountant in consultation with JPM, in order to investigate actions or omissions of the Insiders prior to the Petition Date that may have impacted the Estate, including with respect to the Insiders' and/or Debtor's

disclosure obligations to the Lenders and candor with respect thereto. The intention of such investigation is to identify causes of action for the Estate against the Insiders for breaches of fiduciary duties, contract, or otherwise.

The Trustee and Accountant shall keep JPM apprised of the status of the investigation, including through status conferences, occurring no less frequently than on a monthly basis, in which the Trustee, Accountant, and JPM all participate. The Trustee shall confer with JPM on the decision regarding whether to pursue any claims against the Insiders during the course of and upon the conclusion of the investigation. If at any point during the investigation, the Trustee determines he will not pursue any claim against the Insiders and JPM has yet to advance the entire amount of the Accountant Advance, JPM shall not be obligated to advance any additional amount. To the extent the Trustee and JPM disagree as to any material matter related to the investigation or whether to pursue claims against the Insiders, the Trustee and JPM, in consultation with the Bankruptcy Administrator, shall engage in good faith efforts to resolve the matter for no less than 7 calendar days, after which if no agreement has been reached, either party may file a motion to have the matter heard and resolved by the Court.

Recoveries resulting from such investigation shall be shared in accordance with the following waterfall:

1. Accountant's fees and expenses that exceed the Accountant Advance;

2. The Accountant Advance to JPM; and

3. For all remaining amounts recovered on account of the D&O Policy, a recovery of 50% to the Estate and 50% to JPM.

4. For the avoidance of doubt, JPM shall be entitled to recover the Accountant Advance regardless of the source of recovery, even if not from the D&O Policy; however, JPM shall only receive a 50% recovery from proceeds received under the D&O Policy. Further, except as to recoveries from the "D&O Policy", the Parties stipulate the JPM has no perfected security interest in any lawsuit that may be brought by the Trustee against the Insiders.

   v. Unless otherwise specified in this section, no other terms or conditions of the Carve Out Motion, the Carve Out Order, or the Term Sheet shall be amended, altered, or otherwise modified.

 d. JPM agrees to defer recovery on its Deficiency Claim until the Unsecured Claimants have received the Unsecured Threshold Amount from the Unsecured Claims. After which, JPM shall recover on its Deficiency Claim only from the Deficiency Pool, *pari passu* with the Unsecured Claimants on account of the Remaining Unsecured Claims Amount.

   i. As used in this subsection, the following terms shall have the following meaning:

    1. "*Deficiency Claim*" means the amount of the Proofs of Claim remaining after JPM has received all distributions to which it is entitled as allocated to it under the Term Sheet as revised by this Settlement Agreement.

    2. "*Deficiency Pool*" means an amount equal to the Unsecured Pool minus the Unsecured Threshold Amount.

    3. "*Remaining Unsecured Claims Amount*" means the Unsecured Claims minus the Unsecured Threshold Amount.

    4. "*Unsecured Claims*" means all Allowed general unsecured claims timely filed in this Chapter 7 Case.

    5. "*Unsecured Claimants*" means any holder of the Unsecured Claims.

    6. "*Unsecured Pool*" means the amount of distributable cash held by the Trustee and allocable to the Unsecured Claims.

    7. "*Unsecured Threshold Amount*" means an amount that is 30% of the Unsecured Claims.

 e. The Parties stipulate and agree that neither JPM nor the Lenders shall have any security interest in any tax refunds for any taxing period ending after the Petition Date.

 f. The Parties stipulate and agree that the only Commercial Tort Claims that JPM and/or the Lenders have a perfected security interest in are as follows:

   i. *PHS v. Orbit Marketing LLC (d/b/a Climax Solar) and Joshua Thompson* - Case No. 21-cv-703, United States District Court, Western District of Michigan;

      ii.    *PHS v. Hummingbird Solar LLC and Bradley Shaver* - Case No. 2021-cvs-332, General Court of Justice Superior Court Division, County of Iredell, NC;

      iii.    *PHS v. Christopher Lavalla* - Case No. 2021-CP-40-02641, Court of Common Pleas for Fifth Judicial District, County of Richland, SC;

      iv.    *PHS v. Lucas McDermott* - Case No. 2:21-cv-02229-CSB, United States District Court for the Central District of Illinois;

      v.    *PHS v. Eric Heath* - Case No. 3:21-cv-02229-CMC, United States District Court for the District of South Carolina;

      vi.    *PHS v. Lyle Ciardi* - Case No. 21-cvs-11484, Superior Court Division for the County of Mecklenburg, North Carolina; and

      vii.    *PHS v. Generac Power Systems, Inc.* - Case No. 6:22-cv-000043-NKM, United States District Court for the Western District of Virginia.

    g.    The Parties stipulate and agree that neither JPM nor the Lenders has a security interest in any Deposit Accounts, as defined in the UCC, over which they do not maintain control, as defined in the UCC

3. Upon execution of this Settlement Agreement and approval of the Settlement Agreement by the Bankruptcy Court, the Trustee, on behalf of the Debtor's estate, releases, waives, and discharges the Lenders from any and all liabilities, obligations, actions, suits, judgments, claims, causes of action and demands, known or unknown, whatsoever at law or in equity arising from, in connection with or related to that certain Master Commercial Card Agreement dated November 4, 2021, between JPM and the Debtor (the "Credit Card Agreement"), the Credit Agreement, the Security Agreement, and the Amendment (and any other documents related to any of the foregoing), including, but not limited to, any such claims or actions asserted in accordance with the Adversary Proceeding and the Claims Objection; provided that the foregoing release shall not limit or be deemed to limit the rights of the Trustee, on behalf of the Debtor's estate, to enforce this Settlement Agreement in accordance with its terms.

4. This Settlement Agreement may be executed in counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same.

5. The undersigned represent and warrant that they have full authority to execute this Settlement Agreement on behalf of their respective Party or client and have obtained all necessary approvals. This Settlement Agreement is the resolution of disputed claims and nothing herein shall be deemed an admission against either party.

6. This Settlement Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the Parties with respect to its subject matter, provided that all obligations under the Term Sheet shall remain in full force and

effect other than as expressly amended or supplemented by the terms of this Settlement Agreement.

7. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' respective assigns and successors, including trustees and receivers.

8. This Settlement Agreement may be signed and transmitted electronically or by facsimile, which shall be deemed to have the full force and effect of original ink signatures.

9. This Settlement Agreement shall become effective upon the entry of an order approving this Settlement Agreement by the Court.

10. Within seven (7) days of Court approval of this Settlement Agreement, the Trustee shall file a notice of dismissal of the Adversary Proceeding with prejudice and withdraw the Claim Objection, with each party to bear its own fees and costs.

| | |
|---|---|
| **Jimmy R. Summerlin, solely in his capacity as chapter 7 trustee of the estate of Power Home Solar, LLC d/b/a Pink Energy.** | **JPMorgan Chase Bank, N.A., as Administrative Agent under the Credit Agreement on behalf of the Lenders** |
| By: _[signature]_ | By: _[signature]_ |
| Printed Name: Jimmy R. Summerlin, Jr. | Printed Name: William A. Canney |
| Title: Chapter 7 Trustee | Title: Authoriized Officer |
| Jimmy R. Summerlin, Esq.<br>Young, Morphis, Bach & Taylor, LLP<br>First Lawyers Building at North Park<br>858 2nd Street NE, Suite 200<br>P.O. Drawer 2428<br>Hickory, North Carolina 28603<br><br>*Chapter 7 Trustee* | William A. Canney, Authorized Officer<br>*JPMorgan Chase Bank, N.A.*<br>611 Woodard Ave., 2nd Floor<br>Detroit, Michigan 48226<br><br>*Authorized Signatory* |

# citrix | RightSignature

## SIGNATURE CERTIFICATE



**REFERENCE NUMBER**
A31C3377-6144-42BE-BDEF-D7EAAA8C0115

| TRANSACTION DETAILS | DOCUMENT DETAILS |
|---|---|
| **Reference Number** <br> A31C3377-6144-42BE-BDEF-D7EAAA8C0115 | **Document Name** <br> PHS-JPM AP Settlement Agreement |
| **Transaction Type** <br> Signature Request | **Filename** <br> PHS-JPM_AP_Settlement_Agreement.pdf |
| **Sent At** <br> 03/18/2024 09:26 EDT | **Pages** <br> 8 pages |
| **Executed At** <br> 03/18/2024 11:45 EDT | **Content Type** <br> application/pdf |
| **Identity Method** <br> email | **File Size** <br> 134 KB |
| **Distribution Method** <br> email | **Original Checksum** <br> 93f5559578f94d6d0b0f46f001699f75b92a0d5eefb7a51c9cb6b607537e3f1f |
| **Signed Checksum** <br> 9300c02e9098fb002c4813f2ac1ae0bac703ce00d794eb3448c19989d627140d | |
| **Signer Sequencing** <br> Enabled | |
| **Document Passcode** <br> Disabled | |

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name** <br> Jimmy R. Summerlin, Jr. <br> **Email** <br> jimmys@hickorylaw.com <br> **Signer Sequence** <br> 1 <br> **Components** <br> 1 | **Status** <br> signed <br> **Multi-factor Digital Fingerprint Checksum** <br> 07bb646ad998ded191f2e587ce829084203f243efb36fbe58b0ebdbdb04ea824 <br> **IP Address** <br> ▇▇▇▇▇▇▇▇▇▇ <br> **Device** <br> Firefox via Windows <br> **Drawn Signature** <br> *[signature]* <br> **Signature Reference ID** <br> 0CFF9AF5 <br> **Signature Biometric Count** <br> 4 | **Viewed At** <br> 03/18/2024 11:45 EDT <br> **Identity Authenticated At** <br> 03/18/2024 11:45 EDT <br> **Signed At** <br> 03/18/2024 11:45 EDT |
| **Name** <br> William A. Canney <br> **Email** <br> ▇▇▇▇▇▇▇▇▇▇ <br> **Signer Sequence** <br> 0 <br> **Components** <br> 2 | **Status** <br> signed <br> **Multi-factor Digital Fingerprint Checksum** <br> f896c1e9cbda256bc38a60a019e41f005c6cf3018e6f368ab1dc2c9ad27de8b9 <br> **IP Address** <br> ▇▇▇▇▇▇▇▇▇▇ <br> **Device** <br> Chrome via Windows <br> **Drawn Signature** <br> *[signature]* <br> **Signature Reference ID** <br> 53FC2447 <br> **Signature Biometric Count** <br> 2 | **Viewed At** <br> 03/18/2024 10:29 EDT <br> **Identity Authenticated At** <br> 03/18/2024 10:31 EDT <br> **Signed At** <br> 03/18/2024 10:31 EDT |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 03/18/2024 09:26 EDT | Jimmy Summerlin (jimmys@hickorylaw.com) created document 'PHS-JPM_AP_Settlement_Agreement.pdf' on Firefox via Windows from ▇▇▇▇▇▇▇▇▇▇ |
| 03/18/2024 09:26 EDT | William A. Canney (▇▇▇▇▇▇▇▇▇▇) was emailed a link to sign. |
| 03/18/2024 10:29 EDT | William A. Canney (▇▇▇▇▇▇▇▇▇▇) viewed the document on Chrome via Windows from ▇▇▇▇▇▇▇▇▇▇ |

| TIMESTAMP | AUDIT |
|---|---|
| 03/18/2024 10:31 EDT | William A. Canney (██████████) authenticated via email on Chrome via Windows from ██████████ |
| 03/18/2024 10:31 EDT | William A. Canney (██████████) signed the document on Chrome via Windows from ██████████ |
| 03/18/2024 10:31 EDT | Jimmy R. Summerlin, Jr. (jimmys@hickorylaw.com) was emailed a link to sign. |
| 03/18/2024 11:44 EDT | Jimmy R. Summerlin, Jr. (jimmys@hickorylaw.com) viewed the document on Firefox via Windows from ██████████ |
| 03/18/2024 11:45 EDT | Jimmy R. Summerlin, Jr. (jimmys@hickorylaw.com) viewed the document on Firefox via Windows from ██████████ |
| 03/18/2024 11:45 EDT | Jimmy R. Summerlin, Jr. (jimmys@hickorylaw.com) authenticated via email on Firefox via Windows from ██████████ |
| 03/18/2024 11:45 EDT | Jimmy R. Summerlin, Jr. (jimmys@hickorylaw.com) signed the document on Firefox via Windows from ██████████ |

## **EXHIBIT B**

**Proposed Order**

YMBT 290477.1

**UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| **In re:**<br><br>**Power Home Solar, LLC,**<br><br>        **Debtor.**<br><br>**JIMMY R. SUMMERLIN, JR.**, in his capacity as Chapter 7 bankruptcy trustee for the Estate of **POWER HOME SOLAR, LLC** d/b/a **PINK ENERGY**,<br><br>        **Plaintiff,**<br><br>v.<br><br>**JPMORGAN CHASE BANK, N.A.**, in its capacity as Administrative Agent for JPMorgan Chase Bank, N.A., CitiBank, N.A., and Pinnacle Bank; **JPMORGAN CHASE BANK, N.A., CITIBANK, N.A., and PINNACLE BANK, N.A.**,<br><br>        **Defendants.** | **Chapter 7**<br><br>**Case No. 22-50228**<br><br><br><br>**AP Case No. 23-03013**<br><br><br><br>**ORDER GRANTING MOTION TO APPROVE SETTLEMENT OF ADVERSARY PROCEEDING AND CLAIMS OBJECTION PURSUANT TO RULE 9019** |

**ORDER APPROVING SETTLEMENT
PURSUANT TO BANKRUPTCY RULE 9019**

  This matter is before the Court on the Motion to Approve Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion"). In the Motion, JIMMY R. SUMMERLIN, JR., in his capacity as the Chapter 7 bankruptcy trustee (the "Trustee") for the Estate of Power Home Solar,

YMBT 290477.1

LLC d/b/a Pink Energy (the "Debtor") seeks approval of the settlement of this Adversary Proceeding adverse to JPMorgan Chase Bank, N.A., *et al*. (collectively "JPM", and with the Trustee, the "Parties") and related Claims Objection. The Settlement Agreement (the "Settlement") between Trustee and Recipient was attached as **Exhibit A** to the Motion. Having considered the Motion and Settlement and for good cause shown, the Court finds, concludes, and orders:

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is appropriate in this district pursuant to 28 U.S.C. § 1409. The authority for the relief sought herein is Bankruptcy Rule 9019.

2. Notice and service of the Motion were appropriate.

3. The terms of the Settlement are fair and reasonable. The Settlement is within the bounds of the Trustee's sound business judgment and the standards applicable to Bankruptcy Rule 9019.

4. Therefore, the Motion is granted and the Settlement is approved.

5. The Court retains jurisdiction over any disputes regarding the validity, interpretation, or performance of the Settlement, including but not limited to the ability to enforce the payment.

**IT IS SO ORDERED.**

*This order has been signed electronically.*           *United States Bankruptcy Court*
*The Judge's signature and the Court's*
*seal appear at the top of this Order.*

YMBT 290477.1